United States Court of Appeals
For the First Circuit

_____

No. 23-1626

SANDRA RODRÍGUEZ-COTTO; RAFELLI GONZÁLEZ-COTTO,

Plaintiffs - Appellees,

v.

JENNIFFER A. GONZÁLEZ-COLÓN, Governor of Puerto Rico; LOURDES LYNNETTE GÓMEZ TORRES, Secretary of Department of Justice; ARTURO GARFFER, Secretary of Puerto Rico Department of Public Safety; JOSEPH GONZÁLEZ FALCÓN, Commissioner of the Puerto Rico Police Bureau,

Defendants - Appellants.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernandez, U.S. District Judge]
_____

**REPLY BRIEF FOR DEFENDANTS-APPELLANTS**

**OMAR ANDINO FIGUEROA**
Solicitor General of Puerto Rico
USCA. No. USCA No. 1197240
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900
E-mail: omar.andino@justicia.pr.gov

**FRANCISCO J. GONZÁLEZ-MAGAZ**
USCA No. 111101
Francisco González P.S.C.
1519 Ponce de León
First Federal Suite 805
San Juan, Puerto Rico 00909
Telephone: (787) 504-5880
Email: gonzalezmagaz@gmail.com

Dated: September 8, 2025

## Table of Contents

|     |     | Page(s) |
| --- | --- | --- |

I.    INTRODUCTION ................................................................................... 2

II.   ARGUMENT ......................................................................................... 4

       A. Appellants' reply to Appellees …………………………………….....4

       B. Brief reply to *amicus* briefs…………………………….…………..12

III.  CONCLUSION ...................................................................................14

**CERTIFICATE OF FILING AND SERVICE** ...........................................................15

**CERTIFICATE OF COMPLIANCE WITH RULE 32(G)** .......................................16

# Table of Authorities

**Page(s)**

**Laws (State)**

No. 20 of 2017, P.R. Laws Ann. tit. 25, §§ 3501, et seq.
Article 5.14(a)……………………………………………………………..2

**Cases (Federal):**

*Frese v. Formella*, 53 F.4th 1 (1st Cir. 2022)……………………………………………..5

*Garrison v. Louisiana*, 379 U.S. 64 (1964)……………………………………………5

*U.S. v. Alvarez*, 567 U.S. 709 (2012)…………………………………………………….4

**Secondary Sources**

MODEL PENAL CODE § 250.3 (AM. LAW INST. 1980)……………………………10

United States Court of Appeals
For the First Circuit
_____

No. 23-1626

SANDRA RODRÍGUEZ-COTTO; RAFELLI GONZÁLEZ-COTTO,

Plaintiffs - Appellees,

v.

JENNIFFER A. GONZÁLEZ-COLÓN, Governor of Puerto Rico; LOURDES LYNNETTE GÓMEZ TORRES, Secretary of Department of Justice; ARTURO GARFFER, Secretary of Puerto Rico Department of Public Safety; JOSEPH GONZÁLEZ FALCÓN, Commissioner of the Puerto Rico Police Bureau,

Defendants - Appellants.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernandez, U.S. District Judge]
_____

**REPLY BRIEF FOR DEFENDANTS-APPELLANTS**

**APPELLANTS' REPLY BRIEF**

**TO THE HONORABLE COURT:**

    **COME NOW** Defendants-Appellants, Jenniffer González-Colón, Governor of Puerto Rico; Lourdes Gómez Torres, Secretary of the Puerto Rico Department of Justice; Arturo Garffer, Secretary of the Department of Public Safety; and Joseph Gónzalez, Commissioner of the Puerto Rico Police Bureau ("Government" or "Appellants"), through the undersigned counsel, and respectfully state and pray as follows:

## I.  INTRODUCTION

This case is not about false statements. False statements are not the subject of Article 5.14(a) of the Law of the Puerto Rico Department of Public Safety, Law No. 20 of 2017, P.R. Laws Ann. tit. 25, §§ 3501, et seq. ("Article 5.14(a)" or "Law 20").[1] In its simplest form, Article 5.14(a) seeks to limit the diffusion of purposeful misinformation during times when an emergency has officially been declared. False statements are allowed under the statute because only when it is "knowingly false" is a person liable for making it. If a person only repeats statements by a third party which are false but are not knowingly false to the person who repeats it, then that person is not responsible under Law 20.

Sandra Rodríguez-Cotto and Rafelli González-Cotto ("Appellees"), challenged the constitutionality of Article 5.14(a)[2] of the Law of the Puerto Rico Department of Public Safety, Law No. 20 of 2017, P.R. Laws Ann. tit. 25, §§ 3501, et seq. ("Law 20"). (*See*

---

[1]  A review of Article 5.14(a) reveals the evident limits on its scope and true purpose. To that end, Article 5.14 reads:
Article 5.14.- Violations and Penalties

> Any person, natural or legal, who shall perform any of the following acts on purpose, **knowingly or recklessly after the Governor of Puerto Rico has decreed by Executive Order an emergency or disaster**, shall be punished with a penalty of imprisonment not exceeding six (6) months or a fine not exceeding five thousand dollars ($5,000) or both sentences at the discretion of the court:
>
> (a) **Gives a warning or false alarm**, **knowing that the information is false**, in relation to the **imminent occurrence of a catastrophe in Puerto Rico**, or disseminates, publishes, transmits, transfers or circulates through any means of communication, including the media, social networks, or any other means of dissemination, publication or distribution of information, **a notice or a false alarm, knowing that the information is false, when as a result of its conduct it puts the life, health, bodily integrity or safety of one or more persons at imminent risk, or endangers public or private property**.
>
> In the event that the notice or false alarm results in damage to the public purse, to third parties, or public or private property exceeding ten thousand dollars ($10,000), or where the conduct results in injury or physical harm of another, that person shall have committed a felony with a penalty of imprisonment for a fixed term of three (3) years. P.R. Laws Ann. tit. 25 § 3654.

[2] As explained in the District Court's Opinion and Order, Law No. 135 of 2020 amended Law 20, and renumbered Article 6.14 to 5.14. To maintain uniformity with the District Court and avoid confusion, we refer to Article 5.14, not to Article 6.14.

2

Appellants' Appendix, at pages 1-16.) On March 31, 2023, the district court entered an opinion and order finding Article 5.14(a) to be unconstitutional and judgment quickly followed permanently enjoining its application. (*See* Appellants' Addendum, at pages 1-45, and 50.) This appeal promptly ensued.

On July 9, 2025, Appellants filed their brief, and on August 9, 2025, Appellees followed suit. On August 12, 2025, the Hon. Frank J. Bailey (Ret.), Hon. Eugene R. Wedoff (Ret.), Hon. Bruce A. Markell (Ret.), and Law Professor David R. Kuney ("Retired Judges") filed an *amicus* brief, as did Electronic Frontier Foundation, Foundation for Individual Rights and Expression, Free Press, Freedom of the Press Foundation, and PEN American Center, Inc. ("Electronic Frontier Group"), on August 14, 2025; and the Committee for Freedom of the Press, Center for Investigative Reporting, Dow Jones & Company, Inc., First Amendment Coalition, Hearst Corporation, Inter American Press Association, Intercept Media, Inc, Massachusetts Newspaper Publishers Association, McClatchy Company, Media Institute, National Freedom of Information Coalition, National Newspaper Association, National Press Photographers Association, New England Newspaper and Press Association, Inc., New York Times, Online News Association, Radio Television Digital News Association, Society of Environmental Journalists, Society of Professional Journalists, Student Press Law Center, and Time USA ("Freedom of the Press Group"), on August 15, 2025. It is worth noting that the *amicus* brief filed by the Retired Judges focused on the jurisdictional, bankruptcy and PROMESA Title III questions on which all parties agree.

3

Appellees affirm in their brief that Article 5.14(a) is an unconstitutional infringement upon their First Amendment rights. Specifically, Appellees hold that *U.S. v. Alvarez*, 567 U.S. 709 (2012), rather than being distinguishable, applies to this case and that the First Amendment makes no categorical exception for knowingly or recklessly false statements. They further argue that Article 5.14(a)'s limit on speech is both content-based and of extraordinary scope. *Amicus* briefs by private organizations generally support the Appellees' contentions, with the Freedom of the Press Group offering speculative scenarios of abuse and the Electronic Frontier Group taking it one step further with comparisons with Egypt, Singapore and Russia.

In compliance with the Court's order, Appellants respond to Appellees and the friends of the Court with this reply.

## II. ARGUMENT

### A. Appellants' reply to Appellees

As previously stated, Appellees' position is summarized by their strict holding that *Alvarez* stands for First Amendment protection of knowingly or recklessly false statements and that Article 5.14(a)'s limit on speech is both content-based and of extraordinary scope. However, Appellees extend the holding in *Alvarez* and disregard the clear distinctions between that case and the one at bar. Also, it is difficult to imagine how a statute can be both content-based and extraordinary in scope, especially when Law 20 is neither.

In their brief, Appellees argued:

> *Second*, the district court rightly concluded that Article 5.14(a) violates the First Amendment. Defendants-Appellants argue that knowingly false speech

4

is not entitled to constitutional protection, citing the Supreme Court's decision in *Garrison v. Louisiana* and this Court's decision in *Frese v. Formella*, which held that laws criminalizing defamation of public officials and public figures do not violate the First Amendment so long as they punish only knowingly or recklessly false libels. The Supreme Court rejected precisely this analogy in *Alvarez*, holding that the actual malice requirement in defamation cases does not imply that all knowingly or recklessly false speech is unprotected by the First Amendment. See Appellees' Brief, at page 13.

While it is true that Appellants' arguments in support of the constitutionality of Article 5.14(a) are partly based on *Garrison v. Louisiana*, 379 U.S. 64, 67 (1964), and *Frese v. Formella*, 53 F.4th 1 (1st Cir. 2022), it is incorrect to suggest that *Alvarez* defeats their application to this case. In *Garrison*, the Supreme Court held:

> The use of **calculated falsehood, however, would put a different cast on the constitutional question**. Although honest utterance, even if inaccurate, may further the fruitful exercise of the right of free speech, it does not follow that **the lie, knowingly and deliberately published about a public official, should enjoy a like immunity**. At the time the First Amendment was adopted, as today, there were those unscrupulous enough and skillful enough to use the deliberate or reckless falsehood as an effective political tool to unseat the public servant or even topple an administration. That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected. Calculated falsehood falls into that class of utterances which are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. . . . **Hence, the knowingly false statement and the false statement made with reckless disregard of the truth do not enjoy constitutional protection**. (Internal citations omitted.) (Emphasis added). *Garrison*, at 75.

The Supreme Court was clear and unequivocal in stating that "knowingly false statement and the false statement made with reckless disregard of the truth do not enjoy constitutional protection". And in *Alvarez,* the Supreme Court stated:

5

Even when considering some instances of defamation and fraud, moreover, the Court has been careful to instruct that **falsity alone may not suffice to bring the speech outside the First Amendment. The statement must be a knowing or reckless falsehood**. See *Sullivan*, *supra*, at 280 (prohibiting recovery of damages for a defamatory falsehood made about a public official unless the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not"); see also *Garrison*, *supra*, at 73 ("[E]ven when the utterance is false, the great principles of the Constitution which secure freedom of expression . . . preclude attaching adverse consequences to any except the knowing or reckless falsehood"); *Illinois ex rel. Madigan* v. *Telemarketing Associates, Inc.*, 538 U.S. 600, 620 (2003) ("False statement alone does not subject a fundraiser to fraud liability").

The Government thus seeks to use this principle for a new purpose. It seeks to convert a rule that limits liability even in defamation cases where the law permits recovery for tortious wrongs into a rule that expands liability in a different, far greater realm of discourse and expression. That inverts the rationale for the exception. **The requirements of a knowing falsehood or reckless disregard for the truth as the condition for recovery in certain defamation cases exists to allow more speech, not less**. A rule designed to tolerate certain speech ought not blossom to become a rationale for a rule restricting it. (Emphasis added). *Alvarez*, supra.

In *Alvarez*, the Supreme Court explained that falsity in and of itself is not enough to remove a statement from the protection of the First Amendment. For such a removal to take place, the statement had to be a knowing or reckless falsehood. The Supreme Court did not limit this holding in any way but instead reaffirmed that "…to bring the speech outside of the First Amendment…[it] must be a knowing or reckless falsehood." *Alvarez*, supra. The Supreme Court even cited *Garrison* in support.

Appellees then reference the second cited paragraph to argue that the Supreme Court does not allow the "knowing false" standard to be used in other areas. That is not the case. The Supreme Court warned that the problem with the Stolen Valor Act was that it applied the "knowing falsehood" standard in an effort to expand liability. That is not the case with

Article 5.14(a). Like the prohibition imposed on "knowing falsehood" in defamation cases, that standard here is used to limit liability and allow more speech. Article 5.14(a) does not bar false or incorrect statements, but only those false statements that are made knowing they are false. Moreover, it is difficult to fathom that a defamation law can be held constitutionally valid if it contains a "knowing falsehood" limit on its scope, but not a law that contains the same limit and seeks to protect the citizenry from willful misinformation during times of declared emergencies.

This Court faced a similar question in *Frese*. In reviewing a criminal defamation law of New Hampshire, this Court was "[m]indful of the Supreme Court's guidance that the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection [and] conclude[d] that Frese's allegations fall short of asserting viable constitutional claims." *Frese*, supra. This Court held:

> Frese argues that section 644:11 violates the First Amendment because criminal defamation laws should be per se unconstitutional. The Supreme Court, however, has upheld the criminalizing of false speech, explaining that deliberate and recklessly false speech does not enjoy constitutional protection. Thus, the state can impose criminal sanctions for criticism of the official conduct of public officials so long as the statements were made with actual malice -- that is, with knowledge that they were false or with reckless disregard of whether they were false or not.
>
> Frese concedes that *Garrison* forecloses his First Amendment claim but argues that the time has come to revisit that decision. But, as Frese acknowledges, we do not have the power to revisit Supreme Court decisions. Accordingly, we must find that *Garrison* precludes Frese's First Amendment attack on section 644:11. (Internal citations omitted.) *Frese*, at 6.

Again, since the courts have found constitutional grounds for limiting knowingly false speech to protect against defamation, grounds should equally be found to limit

7

knowingly false speech in times of declared emergencies when the safety of many, and not just the reputation of one, is at stake.

Appellees also point out that unlike analogous false-alarm provisions, Article 5.14(a) "applies anytime, anywhere, regardless of whether the speech in context poses an immediate threat to public safety." See Appellees' Brief, at page 14. This is simply not the case. Article 5.14 begins by stating "[a]ny person, natural or legal, who shall perform any of the following acts on purpose, knowingly or recklessly **after the Governor of Puerto Rico has decreed by Executive Order an emergency or disaster**…" (Emphasis ours). Supra. The application of Article 5.14(a) is strictly limited to times when the Governor of Puerto Rico has decreed an emergency or disaster. In fact, if a person were to outright lie about the impending arrival of a hurricane or a shortage of flour in the supermarkets or cause panic as a result, but did so at a time when no emergency had been declared, the statute would not apply.

Appellees then argue that Article 5.14(a) is content-based because it makes reference to "imminent catastrophes" and because it "distinguish[es] between true and false messages." See Appellees' Brief, at 31. However, Appellees also wrote:

> Whereas analogous false-alarm restrictions apply to speech concerning a crime or catastrophe, this clause applies to anyone who "disseminates" speech on any topic—including "government actions," "availability of provisions," "individual actions," and even "class schedules in schools and universities," Opening Br. 3, 29—where the speech "result[s]" in an "imminent risk" to another's life, health, safety, or bodily integrity, "or endangers public or private property." Suppl. Add. 4. The uncertainty caused by the clause's open-ended scope is compounded by the vague definition of resulting harm, requiring neither immediate effects nor actual harm to identifiable victims. Moreover, the clause does not require the government to show either that the defendant

8

disregarded a substantial risk that the speech would cause harm, or even that any resulting harm was objectively foreseeable. The clause could even expose journalists and news organizations to prosecution for reporting on speech by third parties, including elected officials, without fact-checking false statements The clause's sweeping breadth threatens to chill a great deal of speech and opens the door to politicized prosecutions, particularly when the speech casts the government in an unflattering light or the speaker is a frequent critic of government officials. See Appellees' Brief at 15.

As stated before, it is difficult to understand how a statute can apply to "speech on any topic" and still be content-based. In any case, Appellees position on this holds no water. Appellees state that the topics discussed in statements that could run afoul of Article 5.14(a) are limitless. The information in question could be social, economic, political, environmental, and so on. However, Appellees — in what is a clear inconsistency— claim to be limits on content are in fact limits on the scope of the prohibition. For example, the distinction between true or mistaken information and knowingly false information is a limit on the scope of the statue ensuring that someone can feel free to make a statement believing or even being clueless about its veracity because only knowingly false statements are prohibited. Limiting the prohibition to knowingly false statements concerning the imminent occurrence of a catastrophe in Puerto Rico or that result in imminent risk to safety also serves to tighten the scope further and because they can be of any nature, they are not content-based. Lastly, an additional noose on the scope is imposed by the temporal distinction that the statements in question must be during a declared emergency or disaster. In this way, what Appellees describe as "an open-ended scope" has nothing to do with the scope of the statute, but with its lack of content considerations; and what they describe as "content-

9

based" are limits imposed on the scope of the law to tailor it to address only the interest of the state in limiting misinformation in times of declared emergencies.

Appellees then contend that in barring "…a notice or a false alarm, knowing that the information is false, when as a result of its conduct it puts the life, health, bodily integrity or safety of one or more persons at imminent risk, or endangers public or private property", Article 5.14(a) punishes speech on the basis of public reaction. Again, that is not the case. The statute clearly bars knowingly false notice or alarm, during a declared emergency, which puts the safety of people at imminent risk. The reaction of the people is not considered a factor, but whether the alarm did or did not put at risk the safety of someone.

As previously stated, Article 5.14(a) is based on and significantly similar to Section 250.3 of the American Law Institute's Model Penal Code, which reads:

> A person is guilty of a misdemeanor if he initiates or circulates a report or warning of an impending bombing or other crime or catastrophe, knowing that the report or warning is false or baseless and that it is likely to cause evacuation of a building, place of assembly, or facility of public transport, or to cause public inconvenience or alarm." See, MODEL PENAL CODE § 250.3 (AM. LAW INST. 1980).

According to Appellee, Section 250.3 is distinguishable from Article 5.14(a) because it requires "… that the defendant disregarded a risk that their speech would cause harm, such as evacuation, or that the risk of harm be foreseeable." See Appellees' Brief, at 44. This is in reference to language in Section 250.3 to the effect that "knowing that the report or warning… is likely to cause public inconvenience or alarm." Supra. This distinction, the position maintains, explains why Section 250.3 is constitutional and Article 5.14(a) should not be. The problem is that the distinction is weak, if there is one. Article 5.14(a) requires

10

that the knowingly false statement concerning an imminent disaster be made during a declared emergency. If the circumstances meet the standard that the information in question warned of an imminent disaster or could cause imminent risk, in the context of an already declared emergency, it follows that whoever gave that knowingly false warning knew that this was likely to be the result. In any case, what other reason could a person have to give knowingly false warnings during a declared emergency than to provoke public inconvenience or alarm. It is important to remember that it falls on the state to prove that a person gave this knowingly false warning during a time of declared emergency. It is also important to point out that whereas Section 250.3 can apply at any time, Article 5.14(a) is only actionable during a Governor-declared state of emergency or disaster.

Appellees then offer that Article 5.14(a) could have a chilling effect on public discourse, that it does not require that the warning be believable, or that it applies to private conversations. If democracy is sustained by the free exchange of information and ideas, it must follow that knowingly spreading lies that create public harm offer no value to said exchange. To the contrary, these types of expressions diminish and defeat this essential exercise. As to the credibility of the information, for an Article 5.14(a) case to be proven, the state will have to demonstrate that it warns of an imminent disaster or risk to public safety. Unbelievable warnings cannot meet this *quantum* of proof.

Attacking the second clause of Article 5.14(a), Appellees understand that it is "more expansive and vaguely defined than those in analogous provisions." See Appellees Brief, at 48. Take for example Section 250.3, which requires that the warning be "…likely to cause

11

evacuation of a building, place of assembly, or facility of public transport, or to cause public inconvenience or alarm." Supra. While the references to the evacuation of a building, place of assembly, facility or public transport are rather specific, the references to "cause public inconvenience or alarm" is anything but. Anybody would be hard-pressed to properly define "public inconvenience". A traffic jam is a "public inconvenience". Whereas Article 5.14(a) requires that the knowingly false information "…puts the life, health, bodily integrity or safety of one or more persons at imminent risk, or endangers public or private property." Supra. If anything, the language is Article 5.14(a) is more specific and narrower in scope, requiring imminent risk or public endangerment, and not just a "public inconvenience". Additionally, Article 5.14(a) only applies in the context of a declared emergency, whereas Section 250.3 applies at all times.

### B. Brief reply to *amicus* briefs.

On the whole, the *amicus* briefs generally served to support the Appellees positions. However, there are some points that require a brief reply.

The Electronic Frontier Group offered multiple speculative scenarios where Article 5.14(a) could be subject to abuse and even compared the situation that of Egypt, Singapore, and Russia. Both exercises ignore the fact that in Puerto Rico, as in any other state, there is a presumption of innocence, and the state bears the burden of proving someone guilty. For a court to find someone liable under Article 5.14(a), the state must prove that the person has made knowingly false warnings of impending catastrophe or that could result in certain risk to the public safety. This is not an easy bar to meet. And it is not a bar that has to be met in

Egypt, Singapore or Russia, where freedom of speech and press or the presumption of innocence are not the bedrock principles they are in Puerto Rico, specifically, and the United States, generally.

The Freedom of the Press Group focused in part on the belief that Article 5.14(a) would make it more difficult to provide information in times of emergencies. Appellants agree with the Freedom of the Press Group that "…disaster reporting is of quintessential public interest. The public relies on the press to stay apprised of developing situations and, indeed, to prevent the proliferation of inaccurate information." See Freedom of the Press Group Brief, at 11. The Freedom of the Press Group highlighted instances where misinformation was spread by the government, and it fell on the press to offer true information to the citizenry. The government, the argument follows, would decide what is truthful and what is not. The problem with this argument is that it ignores the realities of Article 5.14(a). If information is important in an emergency, the inevitable flip side is that willful misinformation is hazardous in an emergency. And if the press offers information to offset government misinformation, it cannot fall under Article 5.14(a). This determination, what is or not knowingly false information, is not up to the government to determine but ultimately to the courts as the government will have to prove that the concerned party knew of the information's falsehood before providing it.

## III.  CONCLUSION

Appellants respectfully affirm that the district court erred in finding for Appellees, declaring Article 5.14(a) of Law 20 to be unconstitutional, and issuing a permanent injunction against its enforcement.

**WHEREFORE**, Appellants respectfully request that this Honorable Court revoke the district court's opinion and order of March 31, 2023, deny Appellees request for injunction, and dismiss the Amended Complaint for failure to state a claim.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 8th day of September, 2025.

*s/Omar Andino-Figueroa*
**OMAR ANDINO-FIGUEROA**
Solicitor General of Puerto Rico

*s/Francisco J. González-Magaz*
**FRANCISCO J. GONZÁLEZ-MAGAZ**

## CERTIFICATE OF FILING AND SERVICE

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing and the appendix to this brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

In San Juan, Puerto Rico, this 8th day of September, 2025.

*s/Francisco J. González-Magaz*
**FRANCISCO J. GONZÁLEZ-MAGAZ**
USDC No. 223907
USCA No. 111101
1519 Ponce de León Ave., Suite 802
San Juan, P.R. 00909
Tel. (787) 504-5880
gonzalezmagaz@gmail.com

# CERTIFICATE OF COMPLIANCE WITH RULE 32(G)
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B):

   [X] This brief contains <u>4592</u> words in compliance with Fed. R. App. P. 32(a)(7)(B), excluding the parts of the brief excluded by F. R. App. P. 32(f).

   [ ] This brief uses a monospaced typeface and contains <u>   </u> lines of text.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [X] This brief has been prepared in a proportionally spaced typeface using Times New Roman, Size 14.

   [ ] This document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

 

          *s/Francisco González-Magaz*
          **FRANCISCO GONZÁLEZ-MAGAZ**
          Counsel for Appearing Appellees

          Dated: September 8, 2025